[No. D054261. Fourth Dist., Div. One. Apr. 19, 2010.]

DANIEL DURELL, Plaintiff and Appellant, v.
SHARP HEALTHCARE, Defendant and Respondent.

**COUNSEL**

Law Offices of J. Michael Vallee, J. Michael Vallee; Law Offices of Darrell Palmer and Darrell Palmer for Plaintiff and Appellant.

Higgs, Fletcher & Mack, John Morris and Alexis S. Gutierrez for Defendant and Respondent.

**OPINION**

**McCONNELL, P. J.**—This is a putative class action by Daniel Durell against Sharp Healthcare (Sharp) for violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Durell's theory is that Sharp engaged in deceptive and unfair practices by billing uninsured patients its full standardized rates for services, when it substantially discounts those rates for patients covered by Medicare or private insurance. Durell appeals a judgment of dismissal entered after the court sustained without leave to amend Sharp's demurrer to his second amended complaint (SAC).

In *In re Tobacco II Cases* (2009) 46 Cal.4th 298 [93 Cal.Rptr.3d 559, 207 P.3d 20] (*Tobacco II*), the California Supreme Court recently held that after the voters' approval of Proposition 64 (Gen. Elec., Nov. 2, 2004), a consumer suing a business under the "fraud" prong of the UCL must show actual reliance on the alleged misrepresentation, rather than a mere factual nexus between the business's conduct and the consumer's injury. (*Tobacco II*, at p. 326.) In this case we conclude that to have standing to bring a claim under the "unlawful" prong of the UCL, in which the predicate unlawful conduct is based on misrepresentations, as here, the reasoning of *Tobacco II* is equally applicable and actual reliance is an element of the claim. For this and other reasons addressed below we affirm the judgment.

## COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND

Durell was taken to the emergency room of Sharp Grossmont Hospital and treated five times between October 2000 and May 2005, four times with a severe asthma condition and once with severe foot pain. Durell was uninsured at those times. Sharp requires its patients to sign an "Agreement for Services at a Sharp Facility" (hereafter Agreement for Services), which obligates a patient to pay Sharp's "usual and customary charges for . . . services." The SAC alleged Sharp billed Durell a total of $21,188.12 for his five hospital visits. Durell did not pay his bills and Sharp referred them for collection.[1]

In March 2007 Durell filed a proposed class action against Sharp. Sharp demurred to the complaint, and in November 2007 he filed a first amended complaint (FAC). The FAC included causes of action for (1) violation of the UCL; (2) violation of the CLRA; (3) unjust enrichment; (4) breach of contract; and (5) breach of the duty of good faith and fair dealing. The court sustained Sharp's demurrer to the FAC and granted Durell leave to amend.

In April 2008 Durell filed his SAC, which is the subject of this appeal. The SAC includes the same five causes of action as the FAC.[2] The SAC alleges that hospitals, including Sharp Grossmont Hospital, "maintain documents called Chargemasters, which are spreadsheets that list the gross charge for each product and service provided by the hospital. These gross charges, however, rarely bear any relation to the hospital's costs for providing treatment and differ from the actual, lower charges assessed against the overwhelming majority of patients who participate in Medicare or private insurance programs." The "Chargemaster rates often form the *starting point* for negotiations with insurance companies and managed care organizations to determine reasonable (and lower) reimbursements rates, or for determining Medicare . . . payments to hospitals. . . . Significantly, uninsured patients . . . are the *only* category of payors who are actually obligated to pay the excessive gross Chargemaster rates." (Original italics.)

---

[1] The SAC alleged that for a two-night stay in 2000, Sharp charged Durell $8,017.33, which had ballooned to $13,995.33 with interest and collection charges; in 2001 Sharp charged him $689.15, which had grown to $1,141.33; in 2003 Sharp charged him $876.35, which had grown to $1,261.17; in 2004 Sharp charged him $1,522.60, which had grown to $2,207.10; and in 2005 Sharp charged him $1,992.05, which had grown to $2,583.19. These amounts total $21,188.12. The SAC alleged a total amount of $21,088.12. We use the larger figure.

[2] The SAC added two new plaintiffs, Jon Bigness and Rami Saltagi, as proposed representatives for the class. They do not appeal the judgment, however, and thus it is binding on them. (Code Civ. Proc., § 906; *In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119 [49 Cal.Rptr.2d 339].) Accordingly, complaint allegations pertaining to them are irrelevant. Further, the SAC added a cause of action for violation of the Unruh Civil Rights Act (Civ. Code, § 51), but Durell does not challenge the judgment as to that claim.

Sharp allegedly charged uninsured patients "on average, 412% of the Medicare reimbursement rates for non-outlier reimbursements, compared with the national average of 305% for all hospitals." (Fn. omitted.) Sharp charged Durell its Chargemaster rates, which were "excessive, unreasonable, and unconscionable." Additionally, the SAC alleges, "Sharp regularly sends its patients to collections when they are unable to pay," and Durell "has been the victim of Sharp's aggressive, uncaring and mean-spirited collection efforts." The SAC claims damages consisting of "payments made on the Sharp bills, fees and interest, an adverse credit rating and lower credit score, [and] other costs and expenses, including postage, mileage, and telephone expenses and being prevented from obtaining credit."

Sharp demurred to the SAC. After a hearing on July 25, 2008, the court took the matter under submission. On August 21, 2008, the court issued an order granting the demurrer on all causes of action without leave to amend. The court determined the UCL claim fails because the SAC does not sufficiently allege Durell's injury in fact or causation, that he relied on Sharp's alleged misrepresentation; the CLRA claim also fails for lack of causation allegations; the unjust enrichment claim fails because the SAC does not allege he paid Sharp more than the reasonable value of services he received; and the contract claims fail because the SAC does not sufficiently allege Durell performed his contract obligations or that he had an excuse for nonperformance.

Durell moved for reconsideration of the ruling and submitted a proposed third amended complaint (TAC). The proposed TAC, which is dated September 8, 2008, alleges Durell "has expended money in the sum of $1,522.60 due to [Sharp's] acts of unfair competition." Durell's attorney filed a supporting declaration, which states that since the date of the court's demurrer ruling "Durell paid to Sharp on his account, the amount of $1,522.60." In its opposition, Sharp submitted evidence that Durell had not paid Sharp anything. Durell's counsel admitted his error, and submitted a declaration by Durell that stated on September 29, 2008, "I paid . . . my Sharp bill that was originally $1522 but with 'collection' fees ballooned to $2,098.85."

The court granted reconsideration, but reaffirmed its ruling on the demurrer. The court determined the " 'new fact' of . . . Durell's payment to Sharp does not cure the deficiencies in [his] [SAC]." Judgment was entered in Sharp's favor on January 5, 2009.

## DISCUSSION[3]

### I

*Standard of Review*

"A demurrer tests the sufficiency of a complaint as a matter of law." (*City of Chula Vista v. County of San Diego* (1994) 23 Cal.App.4th 1713, 1718 [29 Cal.Rptr.2d 89].) In reviewing the propriety of the sustaining of a demurrer, the "court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

We review the trial court's ruling independently. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We uphold the court's ruling "on any sufficient ground, whether relied on by the court below or not." (*Wheeler v. County of San Bernardino* (1978) 76 Cal.App.3d 841, 846, fn. 3 [143 Cal.Rptr. 295].)

---

[3] In support of his contentions on appeal, Durell cites lower court cases from California and other states that have no precedential value. We do not consider them. Further, we do not consider Sharp's lengthy argument its conduct was legal under applicable statutes and regulations, and that courts should not become embroiled in the highly regulated field of hospital billing practices. Sharp does not argue these laws preclude Durell's action as a matter of law, and rather it admits they are not relevant to the demurrer analysis.

We note that nationwide, purported class actions are being brought against hospitals under a variety of federal and state law theories pertaining to disparate billing practices. It appears that such suits have largely been unsuccessful. (See *Burton v. William Beaumont Hospital* (E.D.Mich. 2005) 373 F.Supp.2d 707, 712 [discussing dozens of similar federal lawsuits and concluding plaintiffs misguidedly came to the judicial branch for relief that only the legislative branch can grant]; *Bobo v. Christus Health* (E.D.Tex. 2005) 227 F.R.D. 479, 480 [discussing what court refers to as "latest epidemic" in class action suits].) In *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 499 [89 Cal.Rptr.3d 615], the health care provider agreed in a proposed settlement to "end[] price discrimination against the uninsured." In affirming the settlement, the court explained the issue of whether the provider "had a duty not to give discounts to insured patients, or, if given, a duty to give the same discounts to uninsured patients," was "hotly contested." (*Id.* at p. 511.)

## II

*UCL Cause of Action*

### A

*Overview of Law*

■ "The purpose of the UCL [citation] 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. [Citation.]' " (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1470 [49 Cal.Rptr.3d 227].) "A UCL action is equitable in nature; damages cannot be recovered. [Citation.] . . . [U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.' " (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144 [131 Cal.Rptr.2d 29, 63 P.3d 937].)

■ The UCL does not proscribe specific acts, but broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." (Bus. & Prof. Code, § 17200.) "The scope of the UCL is quite broad. [Citations.] Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition." (*McKell v. Washington Mutual, Inc., supra,* 142 Cal.App.4th at p. 1471.) " 'Therefore, an act or practice is "unfair competition" under the UCL if it is forbidden by law or, even if not specifically prohibited by law, is deemed an unfair act or practice.' " (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1335 [90 Cal.Rptr.3d 589].)

■ Historically, the UCL authorized any person acting for the interests of the general public to sue for relief notwithstanding any lack of injury or damages. (*Troyk v. Farmers Group, Inc., supra,* 171 Cal.App.4th at p. 1335.) At the November 2, 2004, General Election, the voters approved Proposition 64, which amended the UCL to provide that a private person has standing to bring a UCL action only if he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204; see *Troyk v. Farmers Group, Inc., supra,* at p. 1335.) "A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact *and* a loss of money or property caused by unfair competition." (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1590 [80 Cal.Rptr.3d 316].)

"The voters' intent in passing Proposition 64 and enacting the changes to the standing rules in Business and Professions Code section 17204 was

unequivocally to narrow the category of persons who could sue businesses under the UCL." (*Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 853 [70 Cal.Rptr.3d 466].) "In Proposition 64, as stated in the measure's preamble, the voters found and declared that the UCL's broad grant of standing had encouraged '[f]rivolous unfair competition lawsuits [that] clog our courts[,] cost taxpayers' and 'threaten[] the survival of small businesses . . . .' [Citation.] The former law, the voters determined, had been 'misused by some private attorneys who' '[f]ile frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit,' '[f]ile lawsuits where no client has been injured in fact,' '[f]ile lawsuits for clients who have not used the defendant's product or services, viewed the defendant's advertising, or had any other business dealing with the defendant,' and '[f]ile lawsuits on behalf of the general public without any accountability to the public and without adequate court supervision.' [Citation.] '[T]he intent of California voters in enacting' Proposition 64 was to limit such abuses by 'prohibit[ing] private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact' [citation] and by providing 'that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public' [citation]." (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228 [46 Cal.Rptr.3d 57, 138 P.3d 207].)[4]

The SAC alleges that Sharp violated all three prongs of the UCL. On appeal, however, Durell does not raise the "fraud" prong and contends only that the SAC states a cause of action under both the "unlawful" and "unfair" prongs of the UCL.

B

*Unlawful Business Practice*

██ "By proscribing 'any unlawful' business practice, '[Business and Professions Code] section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the [UCL] makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527] (*Cel-Tech*).) "An unlawful business practice under [Business and Professions

---

[4] "Proposition 64 also amended Business and Professions Code section 17203, which authorizes courts to enjoin unfair competition, by adding this sentence: 'Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.' " (*Hall v. Time Inc., supra,* 158 Cal.App.4th at p. 852.)

Code] section 17200 is ' "an act or practice, committed pursuant to business activity, that is at the same time *forbidden by law*. [Citation.]" ' " (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 287 [37 Cal.Rptr.3d 434].) " 'Virtually any law—federal, state or local—can serve as a predicate for an action under Business and Professions Code section 17200. [Citation.]' " (*Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 539 [72 Cal.Rptr.3d 888].)

■ The SAC alleges that the predicate for the UCL claim of unlawfulness is Sharp's violation of provisions of the CLRA.[5] " ' "The [CLRA], enacted in 1970, 'established a nonexclusive statutory remedy for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer. . . ." [Citation.]' " [Citation.] "The self-declared purposes of the act are 'to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.' " ' " (*Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1275 [39 Cal.Rptr.3d 634].) The SAC cites subdivision (a)(5) of Civil Code section 1770, which proscribes "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have"; subdivision (a)(9) of the statute, which proscribes "[a]dvertising goods or services with intent not to sell them as advertised"; and subdivision (a)(16) of the statute, which proscribes "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

The SAC alleges Sharp's Web site includes a number of misrepresentations, including that its " 'goal is to offer quality care and programs that set community standards, exceed patients' expectations and are provided in a caring, convenient, *cost-effective* and accessible manner.' " (Italics added.) The SAC alleges that "[a]lthough Sharp promises to provide affordable care to members of the community and to put its patients first, these promises are false and intended to induce patients to seek treatment at Sharp facilities. Sharp has engaged, and continues to engage, in a pattern and practice of charging unfair, unreasonable and inflated prices for medical care to its uninsured patients." Additionally, the SAC alleges Sharp violated the CLRA by misrepresenting in its Agreement for Services that it would charge Durell

---

[5] The SAC also alleges as predicates for the UCL claim of unlawfulness, Business and Professions Code section 17500, which pertains to false or misleading advertising, and California's Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.). On appeal, however, Durell has abandoned any issues related to those statutes by not developing any specific argument pertaining to how the SAC supposedly alleges a UCL claim for unlawfulness based on them. (See *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 984 [74 Cal.Rptr.3d 47].)

the "usual and customary charges for . . . services," when it actually charged him substantially higher rates it applies only to uninsured patients.

The court sustained the demurrer to the UCL cause of action without leave to amend on the ground Durell lacks standing to pursue the claim. The court found the SAC insufficiently alleges "injury in fact" and causation. (Bus. & Prof. Code, § 17204.) As to causation, the court explained the SAC fails to allege Durell was harmed "as a result of" Sharp's conduct. (*Ibid.*) For instance, the SAC does not allege he "relied on Sharp charging its 'usual and customary rates' in receiving treatment." We turn first to the causation issue, which we find dispositive.

The UCL does not define the phrase "as a result of" in Business and Professions Code section 17204. (*Tobacco II, supra*, 46 Cal.4th at p. 325.) In *Tobacco II*, the Supreme Court addressed the issue in the context of a claim under the "fraud" prong of the UCL (46 Cal.4th at p. 311) based on "claims of deceptive advertisements and misrepresentations by the tobacco industry about its products" (*id.* at p. 312; see also *id.* at pp. 307–308, fn. 2).

██ The court held that after the voters' approval of Proposition 64, representative plaintiffs, but not absent class members, must meet Proposition 64 standing requirements. (*Tobacco II, supra*, 46 Cal.4th at p. 320.) The parties in *Tobacco II* agreed the phrase "as a result of" in Business and Professions Code section 17204 "indicates there must be some connection between the injury and the defendant's conduct," but they disagreed as to the particular type of causation the plaintiff must plead and prove. (*Tobacco II*, at p. 325.) The court held the "as a result of" language "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." (*Id.* at p. 326.) The court explained, "there is no doubt that reliance is the causal mechanism of fraud. [Citation.] Additionally, because it is clear that the overriding purpose of Proposition 64 was to impose limits on private enforcement actions under the UCL, we must construe the phrase 'as a result of' in light of this intention to limit such actions." (*Ibid.*) The court rejected the argument that the phrase "as a result of" "merely requires 'a factual nexus' between a defendant's conduct and a plaintiff's injury: 'the representative plaintiff need only be one of the people from whom the defendant obtained money or property while engaging in its unfair business practice.' " (*Id.* at p. 325.)[6]

---

[6] The court expounded: " '[R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was "an immediate cause" of the plaintiff's injury-producing conduct. [Citation.] A plaintiff may establish that the defendant's misrepresentation is an "immediate cause" of the plaintiff's conduct by showing that in its absence the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.' " (*Tobacco II, supra*, 46 Cal.4th at p. 326.)

In their briefing, the parties do not address *Tobacco II*, or whether the court's reasoning there pertaining to reliance applies to Durell's claim under the UCL's "unlawful" prong of the UCL.[7] In *Tobacco II*, the court announced: "We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory involving false advertising and misrepresentations to consumers. The UCL defines 'unfair competition' as 'includ[ing] any unlawful, unfair or fraudulent business act or practice . . . .' ([Bus. & Prof. Code,] § 17200.) There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application." (*Tobacco II, supra*, 46 Cal.4th at p. 325, fn. 17.)

Construing the phrase "as a result of" in Business and Professions Code section 17204 in light of Proposition 64's intention to limit private enforcement actions under the UCL, we conclude the reasoning of *Tobacco II* applies equally to the "unlawful" prong of the UCL when, as here, the predicate unlawfulness is misrepresentation and deception. A consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes. This is a case in which the "concept of reliance" unequivocally applies (*Tobacco II, supra*, 46 Cal.4th at p. 325, fn. 17), and omitting an actual reliance requirement when the defendant's alleged misrepresentation has not deceived the plaintiff "would blunt Proposition 64's intended reforms" (*Cattie v. Wal-Mart Stores, Inc.* (S.D.Cal. 2007) 504 F.Supp.2d 939, 948).

The SAC does not allege Durell relied on either Sharp's Web site representations or on the language in the Agreement for Services in going to Sharp Grossmont Hospital or in seeking or accepting services once he was transported there. Indeed, the SAC does not allege Durell ever visited Sharp's Web site or even that he ever read the Agreement for Services. The SAC merely alleges that as a "proximate result of Sharp's unlawful business practices," Durell and the proposed class "have suffered economic damages in that they are obligated to pay an unreasonable, unfair and unconscionable debt." This is the type of "factual nexus" causation the court rejected in *Tobacco II* in the context of claimed misrepresentation and deception. (*Tobacco II, supra*, 46 Cal.4th at p. 325.)

Durell asserts the SAC is sufficient because actual reliance is not a requirement of his UCL claim. His sole authority is the following language from *Hall v. Time Inc., supra*, 158 Cal.App.4th at page 855: "The phrase 'as a

---

[7] *Tobacco II* was filed on May 18, 2009. Durell filed his opening brief in this matter on July 30, 2009. We asked the parties to be ready to address *Tobacco II* at oral argument, and the opinion was then discussed.

result of' [in Business and Professions Code section 17204] in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection *or* reliance on the alleged misrepresentation." (Italics added.) Durell claims that since the court used the disjunctive term "or," reliance is an optional requirement, and the SAC satisfies the causation requirement merely by pleading Sharp's conduct caused him to incur unreasonable medical bills. We disagree with him based on *Tobacco II* and its applicability here. We conclude the court properly granted the demurrer as to the "unlawful" prong of the UCL cause of action.

## C

### *Unfair Business Practice*

Durell also contends the demurrer was improper as to the "unfair" prong of his UCL claim. He cites *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 718 [113 Cal.Rptr.2d 399], for the general proposition that the "unfair" standard of the UCL " 'is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud.' " Durell summarily asserts the SAC "properly pleads the existence of harm resulting from a business practice that a finder of fact could reasonably determine to be unfair." Although he does not say so, we presume Durell attempts to avoid the demurrer on the ground his claim under the "unfair" prong of the UCL is not fraud based, and thus he is not required to plead reliance.

The UCL does not define the term "unfair" as used in Business and Professions Code section 17200. As this court has explained: "The proper definition for the term 'unfair' in a consumer action is uncertain. In *Cel-Tech*, the California Supreme Court held that in the context of an unfair competition claim by a *competitor*, the term 'unfair' in [Business and Professions Code] section 17200 'means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.' (*Cel-Tech, supra*, 20 Cal.4th at p. 187.) The court also held that 'to guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.' " (*Puentes v. Wells Fargo Home Mortgage, Inc.* (2008) 160 Cal.App.4th 638, 646 [72 Cal.Rptr.3d 903] (*Puentes*).)

"The *Cel-Tech* court criticized as 'too amorphous' the appellate courts' previous attempts to define 'unfair' within the meaning of the UCL. [Citation.] The court cited *People v. Casa Blanca Convalescent Homes, Inc.* (1984)

159 Cal.App.3d 509, 530 [206 Cal.Rptr. 164], a case by the state against a convalescent home, in which the court held ' "[a]n 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" ' [citation], and *State Farm & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1104 [53 Cal.Rptr.2d 229], a consumer case, in which the court held it ' " 'must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.' " ' " (*Puentes, supra,* 160 Cal.App.4th at p. 646.)

"In *Cel-Tech,* the court left open the question of whether its definition of 'unfair' should also apply to consumer actions. [Citation.] Following *Cel-Tech,* 'appellate court opinions have been divided over whether the definition of "unfair" under the UCL as stated in *Cel-Tech* should apply to UCL actions brought by consumers.' " (*Puentes, supra,* 160 Cal.App.4th at p. 646.) "In summary, one line of cases relies heavily on the Supreme Court's language in footnote 12 of *Cel-Tech, supra,* 20 Cal.4th at page 187, that '[n]othing we say relates to actions by consumers' (italics added), while the other line strongly relies on the Supreme Court's unqualified criticism in *Cel-Tech* of the definitions of 'unfair' as set forth in *State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at page 1104 and *People v. Casa Blanca Convalescent Homes, Inc., supra,* 159 Cal.App.3d at page 530, both of which were UCL cases brought by consumers." (*Bardin v. DaimlerChrysler Corp., supra,* 136 Cal.App.4th 1255, 1273; see also *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1254–1255 [99 Cal.Rptr.3d 768] [noting split of authority]; *Davis v. Ford Motor Credit Co. LLC* (2009) 179 Cal.App.4th 581, 594–596 [101 Cal.Rptr.3d 697].)[8]

In *Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917 [134 Cal.Rptr.2d 101] (*Scripps Clinic*), this court agreed with the following analysis in *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845, 854 [128 Cal.Rptr.2d 389] (*Gregory*), a consumer UCL case: " '*Cel-Tech* . . . may signal a narrower interpretation of the prohibition of unfair acts or practices in all unfair competition actions and provides reason for caution in relying on the broad language in earlier decisions that the court found to be "too amorphous." Moreover, where a claim of an unfair act or practice is

---

[8] In a third approach, some courts have adopted the following test of the term "unfair" in consumer UCL actions based on section 5 (15 U.S.C. § 45(a)) of the Federal Trade Commission Act (15 U.S.C. § 41 et seq.): "(1) [t]he consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." (*Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403 [48 Cal.Rptr.3d 770]; accord, *Davis v. Ford Motor Credit Co. LLC, supra,* 179 Cal.App.4th 581, 595, 596, disagreeing with its earlier post-*Cel-Tech* opinion that applied a test the Supreme Court criticized in *Cel-Tech.*)

predicated on public policy, we read *Cel-Tech* to require that the public policy which is a predicate to the action must be "tethered" to specific constitutional, statutory or regulatory provisions.' " (*Scripps Clinic*, at p. 940.) In *Gregory*, the court rejected the pre-*Cel-Tech* definition of "unfair" as conduct that " ' " ' "offends an established public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." ' " ' " (*Gregory*, at p. 854.)

■ Shortly after we issued *Scripps Clinic*, we issued *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147 [135 Cal.Rptr.2d 796] (*Byars*), in which we applied the *Cel-Tech* test in a consumer UCL action. We concluded that "[t]o show a business practice is unfair, the plaintiff must show the conduct 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.' " (*Byars*, at p. 1147, quoting *Cel-Tech, supra*, 20 Cal.4th at p. 187.)

Here, the court's order does not specifically address the "unfair" prong of the UCL. The SAC alleges Sharp's conduct violates public policy, and is "immoral, unethical, oppressive, and unscrupulous," a vague test of unfairness this court rejects. The SAC does not allege the conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law. In his briefing, Durell does not address *Cel-Tech, supra*, 20 Cal.4th 163, and its effect on the definition of "unfair" in consumer UCL cases, or this court's opinions in *Scripps Clinic, supra*, 108 Cal.App.4th 917, and *Byars, supra*, 109 Cal.App.4th 1134. We conclude the court properly granted the demurrer as to the claim under the "unfair" prong of the UCL.[9]

### III

### CLRA

■ Under Civil Code section 1780, subdivision (a), CLRA actions may be brought "only by a consumer 'who suffers any damage *as a result of the use or employment*' of a proscribed method, act, or practice. (Italics added.)

---

[9] Given our holdings on the UCL issues, we are not required to address Durell's argument the SAC sufficiently pleads "injury in fact" within the meaning of Business and Professions Code section 17204. (See, however, our discussion of "injury in fact" as including the incurrence of unreasonable hospital bills in our related opinion in *Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373 [108 Cal.Rptr.3d 669], also filed this date.) In *Hale*, we conclude the plaintiff's second amended complaint adequately pleaded actual reliance for purposes of the UCL and CLRA. (183 Cal.App.4th at pp. 1386–1387.)

'This language does not create an automatic award of statutory damages upon proof of an unlawful act. Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof.' [Citation.] Accordingly, 'plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm.' " (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 809 [66 Cal.Rptr.3d 543].) A "misrepresentation is material for a plaintiff only if there is reliance—that is, ' " 'without the misrepresentation, the plaintiff would not have acted as he did' " ' . . . ." (*Id.* at p. 810.)

Again, the SAC does not allege Durell relied on any representation by Sharp in seeking or accepting treatment at its facility. The mere allegation that Durell suffered damages "[a]s a proximate result" of Sharp's deception is insufficient. Thus, the court's ruling is also correct on the CLRA claim.

## IV

### Contract-based Claims

#### A

#### Breach of Contract

Additionally, Durell contends the court erred by finding the SAC insufficiently pleads a breach of contract cause of action. Specifically, he asserts the SAC adequately alleges Sharp's unreasonable billing practices excuse him from paying its bills.

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) *plaintiff's performance or excuse for nonperformance*, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388 [272 Cal.Rptr. 387], italics added.) "[I]t is elementary that one party to a contract cannot compel another to perform while he himself is in default." (*Lewis Publishing Co. v. Henderson* (1930) 103 Cal.App. 425, 429 [284 P. 713]; see *Karales v. Los Angeles Creamery Co.* (1918) 36 Cal.App. 171, 172–173 [171 P. 821].) While the allegation of performance "can be satisfied by allegations in general terms" (*Careau & Co. v. Security Pacific Business Credit, Inc., supra,* 222 Cal.App.3d at p. 1389), "excuses must be pleaded specifically." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 532, p. 661; see *Kirk v. Culley* (1927) 202 Cal. 501, 506 [261 P. 994] ["The rule is well understood that a recovery on proof of excuse for nonperformance cannot be had on an allegation of full performance . . . ."].)

Durell's assertion that an excuse for the nonperformance of a contract may be generally pleaded is incorrect. He cites *Patrick J. Ruane, Inc. v. Parker* (1960) 185 Cal.App.2d 488, 492 [8 Cal.Rptr. 379], which states that a general allegation of *full performance* was sufficient. He also cites *Careau & Co. v. Security Pacific Business Credit, Inc., supra,* 222 Cal.App.3d at page 1389, which also notes that *performance* may be alleged in general terms, subject to noted exceptions.

We reject Durell's claim that the SAC sufficiently pleads an excuse for nonperformance. The SAC alleges Durell and the proposed class "have fulfilled their obligations and complied with all conditions of the contract(s) they are required to perform or have been excused from fully performing because Sharp have [*sic*] prevented them from doing so." Durell also cites the SAC's allegation that "Sharp unfairly and unlawfully charges its uninsured patients unfair, unreasonable and/or discriminatory rates that are significantly higher than those charged to insured patients."

Certainly, Sharp's services to Durell on five different occasions had value to him, and before pursuing a breach of contract action he was required in good faith to compensate Sharp a minimum of the amount he deemed reasonable. The SAC alleges, "Sharp charges uninsured patients more than four times the price of what Medicare pays hospitals for the same treatment," thus he admits he has no quarrel with approximately one-fourth of the total amount Sharp billed him. The SAC does not allege Durell paid Sharp anything toward his bills, and he admitted during his motion for reconsideration of the demurrer ruling that he had belatedly paid Sharp only $2,098.85 (a debt of $1,522.60 for one visit plus collection fees), which is less than 10 percent of Sharp's total billings.[10] Durell does not assert the $2,098.85 payment remotely covers the reasonable value of Sharp's services, even by his own estimation.[11] We agree that the breach of contract cause of action fails for insufficient allegations of excuse for nonperformance.

Durell's reliance on Civil Code section 1670.5 is misplaced, as it provides that the court may refuse to enforce a contract to the extent the court finds it to be unconscionable. (Civ. Code, § 1670.5, subd. (a).) The statute does not concern the pleading requirements for the nonperformance of a contract, and contrary to Durell's position, it does not indicate that when a

[10] Although on demurrer the court ordinarily looks only at the complaint and matters judicially noticed, "[w]hen a party opposing a demurrer admits that it does not dispute facts extrinsic to the complaint, the trial court may properly treat these facts as judicial admissions for the purpose of testing the sufficiency of the complaint." (*Buckland v. Threshold Enterprises, Ltd., supra,* 155 Cal.App.4th 798, 806.)

[11] Durell essentially concedes that since he has paid Sharp so little he has no breach of contract damages. He claims he is entitled to nominal damages for breach of contract. (See *Sweet v. Johnson* (1959) 169 Cal.App.2d 630, 632 [337 P.2d 499].)

contract is unconscionable in part the plaintiff is excused from all payment obligations. Durell also cites *Whitney Inv. Co. v. Westview Dev. Co.* (1969) 273 Cal.App.2d 594, 602 [78 Cal.Rptr. 302], which states, "A breach does not terminate a contract as a matter of course but is a ground for termination at the option of the injured party." Durell claims this language means that because "Sharp has breached its contractual obligation to charge reasonable rates," he "is no longer obligated to pay." The general language of *Whitney* does not mean Durell is excused from paying Sharp any amount whatsoever.

## B

### Breach of Implied Covenant

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*. [Citation.] The covenant thus cannot ' "be endowed with an existence independent of its contractual underpinnings." ' [Citation.] It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 349–350 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) The "covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619].) "Breach of the covenant of good faith and fair dealing gives rise to a contract action . . . or, in limited contexts, a tort action with the tort measure of compensatory damages and the right to recover punitive damages . . . ." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 800, p. 894, citations & italics omitted.)

Although a defendant's implied duty of good faith and fair dealing may be entirely independent of the plaintiff's duty to perform under the contract (see *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 577 [108 Cal.Rptr. 480, 510 P.2d 1032]), such is not the case here when the SAC's implied covenant cause of action is essentially based on the same allegations as the breach of contract cause of action. Under the circumstances, Durell cannot state a cause of action for breach of the implied covenant without adequately pleading an excuse for his nonperformance. The court properly sustained the demurrer to both the breach of contract and breach of implied covenant causes of action on the same ground.

V

*Unjust Enrichment*

■ "[T]here is no cause of action in California for unjust enrichment." (*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793 [131 Cal.Rptr.2d 347]; see *McKell v. Washington Mutual, Inc., supra,* 142 Cal.App.4th 1457, 1490.) Unjust enrichment is synonymous with restitution. (*Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1314 [265 Cal.Rptr. 525].)

■ "There are several potential bases for a cause of action seeking restitution. For example, restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason. [Citations.] Alternatively, restitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct. In such cases, the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory . . . . [Citations.] In such cases, where appropriate, the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 388 [20 Cal.Rptr.3d 115], fn. omitted.)

■ "Under the law of restitution, '[a]n individual is required to make restitution if he or she is unjustly enriched at the expense of another. [Citations.] A person is enriched if the person receives a benefit at another's expense. [Citation.]' [Citation.] However, '[t]he fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it. [Citation.]' " (*McBride v. Boughton, supra,* 123 Cal.App.4th at p. 389.) As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract. (*California Medical Assn v. Aetna U.S. Healthcare of California, Inc.* (2001) 94 Cal.App.4th 151, 172 [114 Cal.Rptr.2d 109].)

An unjust enrichment theory is inapplicable because Durell alleges the parties entered into express contracts. Further, as the court noted, Durell failed "to allege [he] paid in excess of reasonable value for the services [he] received or that the services were not worth what [he] paid for them." The SAC alleges Sharp charged Durell a total of $21,188.12 for services rendered during his five emergency room visits, but it does not allege what amount of those charges Durell has paid. During the hearing on Durell's motion for

reconsideration of the demurrer ruling, and for leave to filed his proposed TAC, he presented evidence he belatedly paid a bill from Sharp "that was originally $1522 but with 'collection' fees ballooned to $2,098.85." Durell does not assert Sharp's retention of the $2,098.85, less than 10 percent of its total billings, would be unjust.

■■■ " 'There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected.' " (*Peterson v. Cellco Partnership, supra,* 164 Cal.App.4th 1583, 1593.) "If the money is paid in satisfaction of an obligation actually owed by the plaintiff, he or she is obviously not entitled to restitution even though the performance was induced by mistake or fraud." (1 Witkin, Summary of Cal. Law, *supra,* Contracts, § 1025, p. 1117.)

## VI

### *Leave to Amend*

"An appellate court reviews the denial of leave to amend after the sustaining of a demurrer under an abuse of discretion standard. [Citation.] When a demurrer is sustained without leave to amend, the reviewing court must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, it will conclude that the trial court abused its discretion by denying the plaintiff leave to amend. [Citation.] The plaintiff bears the burden of establishing that it could have amended the complaint to cure the defect." (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 958–959 [102 Cal.Rptr.3d 343].)

Durell cursorily argues that if this court "deems any claim inadequately plead [*sic*], it should grant [him] leave to amend the complaint." He claims the proposed "TAC contained numerous additional and detailed allegations when compared to the allegations of the SAC." In support, he gives a block citation to the portion of the appellant's appendix containing the proposed TAC (citing to pp. 733–754 of the appellant's appendix). He does not discuss any particular allegations of the proposed TAC or explain how it cures the numerous defects in the SAC's five causes of action. Further, he does not explain how yet another amended complaint would cure the defects. For instance, he does not claim he can in good faith amend the complaint to allege actual reliance for purposes of the UCL and CLRA claims, to allege he has paid Sharp a reasonable amount for purposes of his contract-based claims, or that he has paid Sharp even more than it is entitled to for purposes of his unjust enrichment claim.

■■■ Under the circumstances, Durell has not met his burden of showing abuse of discretion. Each appellate brief must "[s]upport any reference to a

matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) "The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment. It is entitled to the assistance of counsel." (9 Witkin, Cal. Procedure, *supra*, Appeal, § 701, p. 769.) "It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal. [Citation.] If no citation 'is furnished on a particular point, the court may treat it as waived.' " (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [75 Cal.Rptr.2d 27].) Further, Durell has already filed three complaints without being able to state a single cause of action.

## DISPOSITION

The judgment is affirmed. Sharp is entitled to costs on appeal.

Nares, J., and Irion, J., concurred.