Filed 2/22/24; pub. order 3/7/24 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RYNOLD DWAYNE JACKSON, | D081549 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVDS1919245) |
| MARIO LARA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Janet M. Frangie, Judge. Affirmed.

Law Office of Zulu Ali & Associates, Zulu Ali and Lance Kennix for Plaintiff and Appellant.

Murchison & Cumming, James O. Eiler, Paul W. Burke, and Matthew E. Voss for Defendants and Respondents.

Rynold Dwayne Jackson (Jackson) appeals the entry of summary judgment against him on his complaint for malicious prosecution and unfair business practices, arguing that there are triable issues of fact on both causes of action. We disagree because both causes of action fail as a matter of law; therefore, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2016, Jackson went to Misty's Lounge (Misty's), which is a nightclub located within the Doubletree by Hilton Ontario Airport (Hotel). After approximately an hour and a half, during which time Jackson consumed food and alcohol, a bartender refused to serve Jackson additional alcohol on the purported basis that Jackson was intoxicated. Jackson believed he was refused service based on his race, and he requested to speak to a supervisor. Mario Lara (Lara), the director of security for the Hotel, responded to Jackson's complaint. Jackson and Lara initially discussed the matter inside Misty's but then continued the discussion in the lobby of the Hotel. Lara confirmed the bartender's decision and did not allow Jackson to re-enter Misty's on the purported grounds that Jackson was intoxicated, and that Misty's was closing at that time, which was the early morning of April 3, 2016.

While Lara and Jackson were in the lobby, they came into physical contact with each other. Jackson believed that Lara initiated that contact, while Lara believed Jackson struck him. Lara then called the police and informed the responding officer that he wanted to press charges, resulting in a criminal prosecution against Jackson for battery.

During his criminal trial in 2019, Jackson moved for acquittal pursuant to Penal Code section 1118.1[1] after the close of the prosecution's case. The

---

[1]     Both Jackson's counsel and the trial court referred to Penal Code section 1118, which authorizes a motion for acquittal in a case tried without a jury. Penal Code section 1118.1, on the other hand, authorizes such a motion in a case tried before a jury. Because Jackson was tried before a jury, the motion and the court's ruling are more accurately characterized as being under section 1118.1.

trial court found that there was substantial evidence of battery and therefore denied the motion. Trial resumed and the jury ultimately found Jackson not guilty.

On July 1, 2019, Jackson filed a civil complaint regarding the incident on April 2 and 3, 2016. The operative complaint, which is the second amendment complaint filed on January 13, 2020 (SAC), contains two causes of action. The first is for malicious prosecution against Lara, under which Jackson alleges that he was criminally prosecuted based on Lara's false accusation of assault. The second is for a violation of the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.) against DT Management, LLC (DT), which is the company that managed Misty's and the Hotel. Under that cause of action, Jackson alleges that DT denied African Americans equal access, allowed discriminatory behavior by its employees, and deleted footage of the incident except for footage that appeared to inculpate Jackson.

On December 16, 2021, Lara and DT (collectively Respondents) filed a motion for summary judgment, or alternatively, summary adjudication, of the SAC. Jackson filed a written opposition, but after the court issued a tentative ruling granting the motion, he failed to appear at the motion hearing on April 22, 2022. The court interpreted Jackson's failure to appear

as a submission on the tentative and granted the motion.[2]  The trial court then entered judgment in favor of Respondents on April 28, 2022.  Jackson timely appeals from that judgment.

## II.

## DISCUSSION

### A. *Standard of Review*

"A defendant moving for summary judgment must show the plaintiff's causes of action have no merit.  It may do so by negating an element of a cause of action or showing it has a complete defense to a cause of action.  The burden then shifts to the plaintiff to show a triable issue of material fact as to the cause of action or defense." (*Ghazarian v. Magellan Health, Inc.* (2020) 53 Cal.App.5th 171, 182.)

"We review a summary judgment ruling de novo.  [Citation]  'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.' " (*Perry v. City of San Diego* (2021) 65 Cal.App.5th 172, 178.)  "Though summary judgment review is de novo, review is limited to

---

[2]     The order granting summary judgment does not contain any reasons other than deeming Jackson's failure to appear as a submission on the tentative ruling, and the tentative ruling is not in the record.  Nonetheless, our independent review establishes the validity of the judgment as discussed below, so any failure by the trial court to state its reasons would be harmless and would not require reversal. (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1146.)  Additionally, the parties had an opportunity to present their views on the issues discussed herein, as those issues were raised by the parties in the trial court and on appeal. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39.)

4

issues adequately raised and supported in the appellant's brief."  (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125.)

B. *Malicious Prosecution*

Jackson argues that the trial court erred in granting summary judgment on the malicious prosecution cause of action because there is a factual dispute as to who was the initial aggressor in the altercation with Lara.  He thus claims there are triable issues of fact on the elements of probable cause and malice.

" '[T]o establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." ' "  (*Greene v. Bank of America* (2015) 236 Cal.App.4th 922, 931 (*Greene*).)

The tort of malicious prosecution is disfavored and has therefore been limited for policy reasons.  (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 816–817 (*Wilson*), superseded by statute on another point as recognized in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547–550.)  One such limitation is the interim adverse judgment rule.  (See *Wilson*, at p. 817.) "California courts have long embraced the so-called interim adverse judgment rule, under which 'a trial court judgment or verdict in favor of the plaintiff or prosecutor in the underlying case, unless obtained by means of fraud or perjury, establishes probable cause to bring the underlying action, even though the judgment or verdict is overturned on appeal or by later ruling of the trial court.' [Citation.]  This rule reflects a recognition that '[c]laims that have succeeded at a hearing on the merits, even if that result is subsequently

reversed by the trial or appellate court, are not so lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness.' " (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 776 (*Parrish*).)

"Although the rule arose from cases that had been resolved after trial, the rule has also been applied to the 'denial of defense summary judgment motions, directed verdict motions, and similar efforts at pretrial termination of the underlying case.' " (*Parrish*, *supra*, 3 Cal.5th at pp. 776–777.) "Denial of a defense summary judgment motion on grounds that a triable issue exists, or of a nonsuit, while falling short of a determination of the merits, establishes that the plaintiff has substantiated, or can substantiate, the elements of his or her cause of action with evidence that, if believed, would justify a favorable verdict." (*Wilson, supra,* 28 Cal.4th at p. 824.) "The determination arises, moreover, not because the same issue was litigated in the prior case, but because the result in the prior case (whether a verdict or judgment in the plaintiff's favor, or denial of a defense summary judgment or SLAPP motion) establishes the existence of probable cause as a matter of law, absent proof of fraud or perjury." (*Id.* at p. 825.)

We are not aware of any published decisions applying the interim adverse judgment rule to a motion for acquittal pursuant to Penal Code section 1118.1, but as argued by Respondents, we find it appropriate in this case. While the probable cause standard for initiating a civil case discussed in *Parrish* and *Wilson* is not the same as that in a criminal case, both standards are comparatively low. In the civil context, " 'A litigant or attorney who possesses competent evidence to substantiate a legally cognizable claim for relief does not act tortiously by bringing the claim, even if also aware of evidence that will weigh against the claim. Plaintiffs and their attorneys are

not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh the competing evidence, or to abandon their claim if they think it likely the evidence will ultimately weigh against them.  They have the right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious.' " (*Parrish, supra,* 3 Cal.5th at pp. 777–778.)

Similarly, in the criminal context, " 'It is not necessary that [the malicious prosecution defendant] shall institute an investigation of the crime itself, or seek to ascertain whether there are any other facts relating to the offense, or try to find out whether the accused has any defense to the charge. He is not required to exhaust all sources of information bearing upon the facts which have come to his knowledge.' . . . . 'The facts within his knowledge may not in point of law constitute a crime; but, if they are of such character as to induce in the mind of a reasonable man the honest belief that a crime has been committed, he is justified in seeking to have the crime punished.' " (*Johnson v. Southern Pac. Co.* (1910) 157 Cal. 333, 338.)

More importantly, the standard for a motion for acquittal is higher than that for probable cause to initiate a criminal action.  "In ruling on a motion for judgment of acquittal pursuant to section 1118.1, a trial court applies the same standard an appellate court applies in reviewing the sufficiency of the evidence to support a conviction, that is, ' "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." ' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1212–1213 (*Cole*).) Substantial evidence is defined as "evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*Id*. at p. 1212.)  As for a claim of malicious prosecution based upon initiation of a criminal case, " ' "the

7

question of probable cause is whether it was objectively reasonable for the defendant . . . to suspect the plaintiff . . . had committed a crime." ' " (*Greene, supra,* 236 Cal.App.4th at p. 931.) Accordingly, a motion for acquittal is based on an objective assessment of *guilt* of a crime, whereas the probable cause determination is based on an objective assessment of *suspicion* that a crime was committed.

When Jackson moved for acquittal at the close of the prosecution's case, the only evidence that had been admitted was Lara's testimony and surveillance footage of the altercation in the lobby. At the time Lara decided to pursue the criminal charges against Jackson, his knowledge of the incident was limited to that same evidence, namely, his own perception of the incident and his observation of the surveillance footage. When the court ruled on Jackson's motion for acquittal, it stated, "I think in terms of an 1118, is there enough evidence for this, as [defense counsel] correctly pointed out, substantial evidence? I do think there is." In so ruling, the trial court found that Lara's testimony and the surveillance footage was "evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*Cole, supra*, 33 Cal.4th 1158 at p. 1212.) This finding necessarily encompasses a determination that the evidence was sufficient to meet the probable cause standard of an objectively reasonable suspicion that Jackson committed a crime, as suspicion of a crime is a lower standard than guilt beyond a reasonable doubt.

As for the exception for interim adverse rulings obtained by means of fraud or perjury, "This concern is generally not triggered by dishonesty or malfeasance that is merely intrinsic to an adversary proceeding, such as reliance on alleged untruths or fabricated evidence that a litigant has had a

8

full and fair opportunity to meet and test." (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 810.) Prior to the court's ruling on the motion for acquittal, Jackson's defense counsel extensively cross-examined Lara and used the surveillance footage to test Lara's testimony. Thus, while Jackson disputed Lara's credibility, he had a full and fair opportunity to litigate that issue, and the court implicitly found Lara credible when it determined there was substantial evidence of battery.

Accordingly, under the interim adverse judgment rule, the denial of Jackson's motion for acquittal establishes that Lara had probable cause as matter of law. Because the lack of probable cause is a required element of malicious prosecution, there was no error in granting summary judgment on that cause of action.

C. *Violation of the UCL*

Jackson asserts two UCL violations under which he claims the trial court should have found triable issues of fact. First, he claims that "DT's practice of excluding [him] from its establishment based on race, a false accusation of assault, ensuing arrest without probable cause and sufferance of physical assault by one of its employees clearly indicates a violation of public policy and an unfair business practice in violation of [section] 17200." He contends "there's a public policy against consumers being subject to violence and unwarranted contact by employees at a business establishment." Second, Jackson claims DT's actions were unlawful because they violated Civil Code section 51.5, which prohibits businesses from discriminating based on race. (Civ. Code, §§ 51.5, subd. (a), 51, subd. (b).)

Unfair competition under the UCL includes "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) "Because the statute ' "is written in the disjunctive, it establishes three varieties of

9

unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." ' " (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 610 (*Graham*).)

The UCL does not define the term "unfair." As a result, a few earlier appellate decisions "attempted a definition" by stating that " '[a]n "unfair" business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,' " or by requiring the court to " ' "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." ' " (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 184 (*Cel-Tech*).) In *Cel-Tech*, the California Supreme Court criticized these earlier definitions as "too amorphous." (*Id.* at pp. 184–185.) The *Cel-Tech* court concluded "that any finding of unfairness to competitors under section 17200 [must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition" and, in actions challenging a direct competitor's " 'unfair' " act, it defined the term as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Id.* at pp. 186–187.)

The holding in *Cel-Tech* was expressly limited to actions involving a competitor alleging anticompetitive practices (*Cel-Tech, supra,* 20 Cal.4th at p. 187, fn. 12), and appellate courts have split regarding the definition of "unfair" business practices in a consumer action. Nonetheless, "[t]his court has consistently followed" the line of cases finding that *Cel-tech* narrowed the definition of "unfair" in consumer actions, and "has held a plaintiff alleging an unfair business practice must show the 'defendant's "conduct is tethered to

10

an[ ] underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law." ' " (*Graham, supra,* 226 Cal.App.4th at p. 613; see also, *Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1008; *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1192–1193; *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1365–1366 (*Durell*).) We continue to follow that approach in this case.

For his first theory under the UCL, Jackson refers to a "public policy against consumers being subject to violence and unwarranted contact by employees at a business establishment." He does not provide any argument or legal authority showing that this claimed public policy exists, nor does he identify the basis for this claimed public policy; therefore, we may disregard this point. (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418 [" '[w]here a point is merely asserted by [appellant] without any [substantive] argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion' "].) Further, Jackson improperly relies on the earlier definitions of "unfair" that were criticized in *Cel-Tech*, and an unsupported claim of public policy is insufficient to establish "unfair" conduct under the UCL. For example, in *Durell*, the plaintiff alleged that a hospital overcharged uninsured patients and used improper collection tactics. (*Durell, supra,* 183 Cal.App.4th at pp. 1356–1357.) Although he alleged these practices violated public policy, he failed to state a claim for unfairness under the UCL because he did not allege these practices were tethered to antitrust law or any underlying constitutional, statutory or regulatory provision. (*Id.* at p. 1366.) Jackson's reliance on an unsupported claim of public policy is similarly untethered to any law or regulation. His UCL claim based on a violation of public policy therefore fails as a matter of law.

11

As for his second theory alleging a violation of Civil Code section 51.5, Jackson did not raise this claim in the trial court. It was not asserted in his written opposition to the motion, and he did not appear at the hearing on the motion. Jackson may not raise this theory for the first time on appeal; therefore, we will not consider it. (*Expansion Pointe Properties Limited Partnership v. Procopio, Cory, Hargreaves & Savitch, LLP* (2007) 152 Cal.App.4th 42, 54 [" 'Generally, the rules relating to the scope of appellate review apply to appellate review of summary judgments. [Citation.] An argument or theory will . . . not be considered if it is raised for the first time on appeal.' "].)

Based on the foregoing, Jackson has not shown any error regarding his UCL cause of action.

III.

DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


CASTILLO, J.

12

Filed 3/7/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RYNOLD DWAYNE JACKSON, | D081549 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVDS1919245) |
| MARIO LARA et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

THE COURT:

The opinion in this case filed February 22, 2024, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

O'ROURKE, Acting P. J.

Copies to: All parties