Filed 7/30/13  Kim v. Lee CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JUHEE KIM, | B245447 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC449490) |
| v. | |
| YONG TAI LEE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Johnson, Judge.  Affirmed.

Kim, Park, Choi & Yi and Michael Y. Yi for Defendant and Appellant.

Law Offices of Frank N. Lee and Frank N. Lee for Plaintiff and Respondent.

_____

Appellant Yong Tai Lee appeals from the judgment in favor of Juhee Kim after a bench trial. He claims Kim failed to state any causes of action, and that the court erred in finding their agreement enforceable and finding fraud. We affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

In August 2003, appellant Lee, a physician, hired respondent Kim as program director for his newly-started adult daycare center, Young Again Daycare Center, Inc. (YADC). In October 2005, Ms. Kim received a $200,000 inheritance, and told Dr. Lee that she planned to leave his employment to start her own business. He convinced her to use her $200,000 to buy a 20 percent share in YADC.

According to Ms. Kim, Dr. Lee promised she would receive a dividend at the end of 2006. The dividend was not paid, but Dr. Lee told her he would give it to her "next time." When Ms. Kim prepared the financial report for 2006, she saw a significant amount of money had been taken from the business by Dr. Lee and his mother for personal use. She asked him about it, and he assured her "he would take care of that" and she would receive the dividend soon.

In 2007, the business was thriving, with an increase in daily participants. In April 2008, Ms. Kim examined the financial report for 2007 and saw the same pattern of personal use of company funds that had occurred in 2006. She was upset and told Dr. Lee she would leave YADC if he did not pay her the promised dividend.

On August 11, 2008, Ms. Kim submitted her resignation. Dr. Lee told her if she stayed on longer, he would buy her share of the business. The two discussed price over the next two months, and on October 21, 2008, reached an agreement. Based on Dr. Lee's expressed belief that YADC was by then worth $2 million, they agreed he would purchase her 20 percent share for $400,000. On October 21, 2008, Dr. Lee dictated, Ms. Kim typed, and they both signed a document[1] which provides that Dr. Lee would pay Ms.

---

[1] The document was prepared in Korean. We quote the certified translation which was attached as an exhibit to the first amended complaint and introduced into evidence at trial.

Kim $400,000 "($200,000 in cash, $200,000 in Young Again ADHC check)" for her 20 percent share of stock. Until the completion of the exchange, $7,000 in interest was to be paid each month in two installments. At Dr. Lee's request, Ms. Kim continued to work at YADC after the execution of the agreement.

Ms. Kim gave Dr. Lee the original stock certificate for her shares of YADC. She expected to be paid $200,000 on October 31, 2008, but Dr. Lee said he was looking for the money and he could not pay her the $200,000 in cash as promised in the contract. He told her he would get the $400,000 at one time at the end of 2008 from a prospective buyer. Instead he paid her $7,000 interest as provided in the agreement. She met with Dr. Lee again at the end of 2008 to ask about the money. He told her he had a deal for the sale of the business and asked her to wait another two or three months to finish the escrow. That sale was never completed and at the end of March 2009, Ms. Kim again asked about the $400,000. Dr. Lee told her there was another buyer, but Ms. Kim later discovered that was not the case.

On June 30, 2009, Ms. Kim gave notice that she would leave YADC in one month. At Dr. Lee's request, she stayed on until August 31, 2009.

Dr. Lee did not pay any portion of the $400,000 purchase price, but made several interest payments, totaling $119,000. Other checks he gave Ms. Kim were returned for insufficient funds. Ms. Kim and her attorney met with Dr. Lee in December 2009 and asked about the money owed. Dr. Lee insisted he could not pay her, and told her she would have to sue him. YADC closed in August 2010.

In November 2010, Ms. Kim brought this action against Dr. Lee for breach of contract, fraud and promissory fraud. Dr. Lee's demurrer to the original complaint was sustained, and his demurrer to the first amended complaint was overruled. The case was tried to the court. Ms. Kim testified; the defense called no witnesses.

The court found the October 2008 contract was enforceable and had been breached by Dr. Lee. The court rejected Dr. Lee's argument that the 20 percent rate of interest was usurious, concluding that the usury laws do not apply to a sales transaction such as this stock purchase. Nevertheless, the court converted the obligation to prejudgment interest

3

at the legal rate from the date of maturity, and gave Dr. Lee an offset for the $119,000 he had paid. The court also ruled in favor of Ms. Kim on the fraud and promissory fraud causes of action. Ms. Kim was awarded $400,000 on the contract, plus prejudgment interest of $155,397.57, with an offset of $119,000, for a total of $436,397.57. Dr. Lee filed this timely appeal from the judgment.

## DISCUSSION

### I

Dr. Lee argues the court erred in overruling his demurrer to the first cause of action for breach of contract. "An order overruling a demurrer is not directly appealable, but may be reviewed on appeal from the final judgment." (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182.) In our de novo review, we accept as true all facts properly pleaded in the complaint to determine whether the complaint states facts sufficient to constitute a cause of action. (*Id.* at pp. 182-183; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1469.)

A cause of action for breach of contract requires the following elements: (1) the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach, and (4) resulting damage to plaintiff. (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1367.)

In the first amended complaint, Ms. Kim alleged that on October 21, 2008, she entered into a written agreement with Dr. Lee in which he agreed to buy back her 20 shares of stock in YADC. The price was $400,000, of which $200,000 was to be paid in cash and $200,000 was to paid by check. The agreement was attached to and incorporated into the pleading. It provides:

"Hereunder, it is to refer Dr. Yong Tae Lee as *A*, and Juhee Kim as *B*.

"1. The mutual exchange between *A* and *B* regarding the 20% of Young Again ADHC stocks shall be for $400,000 ($200,000 in cash, $200,000 in Young Again ADHC check), and until the mutual exchange is wrapped up, the interest for

4

which, $7,000, shall be split up and paid every 15th and 30th of each month."
(Italics omitted.)

While the document is brief and not elegant, it is sufficient to constitute a contract. The parties each agree to do something—Ms. Kim will sell her stock and Dr. Lee will pay her for it. (Civ. Code, § 1549.) Although the document does not provide a specific time for performance, under Civil Code section 1657, "a reasonable time is allowed."

Dr. Lee argues uncertainty is created by the final phrase of the agreement, which provides that "until the mutual exchange is wrapped up," interest shall be split up and paid each month. Read in context, this language shows the parties' intent that Dr. Lee pay interest until the payment of principal for the stock was completed. There is no fatal uncertainty in the terms of the agreement.

Dr. Lee next argues that Ms. Kim failed to allege her performance, or excuse for nonperformance. In paragraph 12 of the first amended complaint, Ms. Kim alleged: "On or about October 21, 2008 plaintiff and defendant agreed that defendant Yong Tai Lee would purchase from plaintiff her 20% share of the stock of YADC. The agreed price was for the sum of $400,000 ($200,000 in cash and $200,000 in check). *Based on this agreement, plaintiff sold her 20% interest in YADC and relinquished all of her rights and interest to the business as of the date of the agreement.*" (Italics added.) This allegation should have been placed in the first cause of action for breach of contract, rather than in the second cause of action for fraud, but under a liberal construction of the complaint, Ms. Kim has adequately alleged her performance of the contract.

Dr. Lee next claims Ms. Kim's allegation that he failed to pay $400,000 "by the end of 2008" as agreed to by the parties was not an allegation of breach since the written agreement did not provide for payment by the end of 2008. As we have noted, when a contract does not specify a time for performance, "a reasonable time is allowed." (Civ. Code, § 1657.) The allegation suffices under this construction.

Finally, Dr. Lee argues the allegation that he failed to pay the $7,000 per month interest could not constitute a breach of the contract because it is a usurious interest rate. Assuming, without deciding, that the usury laws apply to this transaction, that allegation

5

is not crucial to breach of contract in light of the alleged breach for failure to pay the principal due under the contract. The court did not err in overruling the demurrer to the cause of action for breach of contract.

## II

Dr. Lee claims there was insufficient evidence to support the judgment in favor of Ms. Kim on the contract cause of action. We disagree.

The October 2008 agreement was introduced into evidence; it established that Dr. Lee would pay Ms. Kim $400,000 for her 20 percent of stock, $200,000 in cash, $200,000 by company check. Ms. Kim testified that after Dr. Lee signed the October 2008 agreement, she gave him the original stock certificate for her share of the company. By doing so, she completed her performance of the agreement.

Ms. Kim testified that Dr. Lee paid no portion of the $400,000 promised in the October 2008 agreement. She requested payment at the end of 2008, but Dr. Lee asked her to wait two or three months to conclude the sale of the business. When that sale failed, Ms. Kim again asked for payment, and Dr. Lee again asked her to wait for another two or three months because he had another buyer. One and a half months later, Ms. Kim discovered there was no buyer and she demanded her $400,000 "right away." He told her to wait. She left her employment with the company in August 2009, without having received any portion of the principal owed, nor had she been paid when she filed her action in November 2010. The court could properly conclude from this evidence that payment was not made within a reasonable time, as provided by Civil Code section 1657. All the elements of breach of contract are supported by this evidence—the existence of a contract, performance by Ms. Kim, failure to perform by Dr. Lee, resulting damage to Ms. Kim.

Dr. Lee argues that the interest rate provided for in the contract is usurious, and thus cannot be a basis for the breach of contract claim. If we assume for the purpose of this decision that the rate is usurious, the interest provision would be void, but would not affect Ms. Kim's right to recover the principal when due, together with interest at the

6

legal rate. (*Epstein v. Frank* (1981) 125 Cal.App.3d 111, 122-123.) "[T]he payee of a note with a usurious interest provision would be entitled to damages in the nature of interest at the legal rate for that period of time which the obligor on the note withheld the principal beyond the date of maturity." (*Id*. at p. 123.)

At trial, Ms. Kim's counsel expressly asked the court to calculate prejudgment interest at the legal rate and to apply the $119,000 that was paid as interest to offset that amount. That is what the court did, imposing interest at the legal rate from October 21, 2008, when Ms. Kim transferred her stock and Dr. Lee became obligated to pay her $400,000, to the date of the judgment, with an offset for the $119,000 Dr. Lee had already paid as interest. This was appropriate.


### III

Dr. Lee also challenges the overruling of his demurrer and the judgment in favor of Ms. Kim on the causes of action for fraud and promissory fraud. At trial, Ms. Kim abandoned her claim for punitive damages. Instead she sought only the actual amount she would have been paid under the agreement. We have concluded that the evidence supports the court's award of those damages under the breach of contract cause of action. In the absence of punitive damages, Ms. Kim's fraud and promissory fraud causes of action would have yielded the same damages. Thus we need not consider whether those causes of action are supported by the evidence.


### IV

Ms. Kim asks that we impose sanctions against Dr. Lee for bringing a frivolous appeal and for violating various rules of appellate procedure in his brief. Under the standards set out in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650, we decline to do so.

7

## DISPOSITION

The judgment is affirmed.  Ms. Kim is to have her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

SUZUKAWA, J.

8