Filed 12/24/24  Garcia v. Sirimanne CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MIGUEL GARCIA,<br><br>Plaintiff, Cross-Defendant and Appellant,<br><br>v.<br><br>SRIYANTHA BENEDICT SIRIMANNE et al.,<br><br>Defendants, Cross-Complainants and Appellants. | B321880<br><br>(Los Angeles County Super. Ct. No. YC071489) |

APPEALS from a judgment of the Superior Court of Los Angeles County, Cary H. Nishimoto, Judge.  Affirmed in part, and vacated and remanded for corrections in part.

Miguel A. Garcia, in pro. per., for Plaintiff, Cross-Defendant and Appellant.

Lara Ruth Shapiro for Defendants, Cross-Complainants and Appellants.

\* \* \* \* \* \*

After partners in a residential real estate venture sued each other, a jury—using a special verdict form—awarded one side $400,000 as damages for breach of a contract and awarded the other side $66,125 as damages for fraud. The parties have each appealed the verdicts against them. We conclude that (1) the $400,000 breach of contract verdict is supported by the jury's unchallenged finding of an *oral* contract, and (2) the trial court must vacate and enter a corrected judgment reflecting that the $66,125 award is for the fraud claim as found by the jury (rather than the money had and received/unjust enrichment claim, as erroneously interpreted by the trial court). The judgment is accordingly affirmed in part, and vacated and remanded for corrections in part.

I.    **Facts**[1]

  A.    ***Joint purchase of home in Palos Verdes Estates***

In 2008, Miguel Garcia (Garcia) was friends and business associates with Sriyantha Benedict Sirimanne (Ben) and Champa

---

1    We have pieced together the pertinent facts from the trial record, which does not reflect the full panoply of activity between the parties. The parties also did not have transcribed one day of testimony (February 18, 2022), but the existence of the breach of contract and fraud claims are based on the testimony of Garcia and the Sirimannes, whose testimony we do have.

Catherine Sirimanne (Champa) (collectively, the Sirimannes).[2]

At that time, Garcia was renting a home in Palos Verdes Estates, California that had an outstanding mortgage. The owner of the home transferred title to the property to a trust that Garcia created; Garcia and Champa are beneficiaries of the trust.[3]

Because the trust vested Garcia with the "Power of Direction" and because he also lived in the home, the Sirimannes left Garcia to make its mortgage payments and pay its other expenses, but provided him money to do so.

### B.    *Garcia loses the home in foreclosure*

By 2011, Garcia was in arrears on the mortgage. In March 2011, the mortgage lender, JPMorgan Chase Bank (the bank), purchased the home at the foreclosure sale in exchange for the outstanding debt of $1,654,508.92.

### C.    *The bank agrees to sell the home back to Garcia*

While continuing to live in the home, Garcia repeatedly sued the bank, sometimes in his individual capacity and sometimes on behalf of the trust. In March 2015, Garcia and the bank reached an agreement to settle the remaining pending lawsuit. Under that agreement, Garcia could buy back the home if he (1) paid the bank $1,352,500, (2) immediately deposited $66,125 into escrow for that acquisition, to be transmitted from Garcia's attorney's client trust account, and (3) dismissed his pending lawsuit.

---

[2]    We use the Sirimannes' first names to avoid confusion; we mean no disrespect.

[3]    The prior owner was paid $120,000 to transfer "all [her] interest in the property" to the trust. The prior owner remained a beneficiary of the trust.

3

In May 2015, Garcia and the bank signed an agreement contemplating Garcia's purchase of the home from the bank. Later, Garcia and the bank signed an amendment to that purchase agreement; among other things, that amendment explicitly authorized Garcia to assign his right to purchase the home to a third party as long as the bank received notice of—and approved—the assignment.

### D. *Garcia convinces the Sirimannes to give him $66,125*

Garcia asked the Sirimannes for $66,125 to deposit into escrow in order to buy back the property.[4]  The Sirimannes gave him those funds.  However, Garcia used those funds—not to buy back the home—but rather to pay off an outstanding debt to his attorney, and he pocketed the rest.  The funds were never deposited to escrow for purchase of the property from the bank.

### E. *Garcia enters into a contract with Ben to sell him the home*

Although Garcia did not own the home, in April 2016 he entered into a written agreement with Ben to sell the Sirimannes the home for $1,750,000.  Under the terms of that contract, Ben was to make an "initial deposit" of $400,000 by personal check into escrow and to pay off the balance with a $1.35 million loan.  Under the contract, Garcia "warrant[ed] that [he was] the owner of the Property, or ha[d] the authority to execute this Agreement."  The contract also provided that "any . . .

---

[4]     At trial, Garcia testified the Sirimannes gave him the $66,125 to pay off an unrelated business debt.  However, consistent with the pertinent standard of review, we are construing the evidence in the light most favorable to the jury's special verdict.

modification" to the agreement "shall constitute one and the same writing" as the agreement itself.

Nowhere does this sales contract state that the $400,000 initial deposit was to be paid to Garcia.

### F.  *Ben buys the home directly from the bank*

Later in the month of April 2016, Ben purchased the home directly from the bank for $1,322,500.  The Sirimannes re-sold the property 18 months later for $1.6 million.

## II.  Procedural Background

### A.  *The complaints*

#### 1.  *The Sirimannes' eviction complaint*

Because Garcia continued to live in the home after the Sirimannes purchased it from the bank, the Sirimannes in September 2016 filed an unlawful detainer action against Garcia.

#### 2.  *Garcia's civil complaint*

Shortly after being served with the notice to vacate that preceded the unlawful detainer lawsuit, Garcia sued the Sirimannes in August 2016.  In the operative first amended complaint and as pertinent here, he sued for breach of contract.[5] In this pleading, Garcia alleged that the Sirimannes had breached a written July 3, 2015 contract promising him $175,000 (as an advance on the money they would make in re-selling the home after acquiring it from the bank), and a written April 19, 2016 amendment raising that advance to $220,000, and a further

---

[5]     He also sued for (1) promissory estoppel, (2) breach of fiduciary duty, (3) fraud, (4) recission, (5) quiet title, and (6) declaratory relief.  The jury either rejected or did not award damages on any of those claims, and those verdicts are not challenged on appeal.

oral amendment agreeing to give him one-half of "the future profits from the market sale."

### 3. *The Sirimannes' responsive civil complaint*

The Sirimannes filed a cross-complaint. As pertinent here, they sued for (1) fraud and (2) money had and received/unjust enrichment.[6] As to both claims, the Sirimannes alleged that Garcia misrepresented what he would do with the $66,125 they gave him.[7]

### B. *Adjudication*

### 1. *Unlawful detainer*

Although the trial court consolidated the Sirimannes' unlawful detainer action with the parties' civil complaints, the court subsequently bifurcated the issue of possession of the home from the parties' "competing monetary claims" and held a bench trial on the issue of possession in July and August 2017. The court found that, at that time, Ben was the "legal owner" of the

---

[6] The Sirimannes labeled that second claim as for "unjust enrichment," which is not a valid, independent cause of action. (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370.) The trial court apparently rectified this by instructing the jury on "money had and received" and the jury's special verdict form combines the claim as "Money Had & Received – Unjust Enrichment."

The Sirmannes also sued for (1) breach of fiduciary duty, (2) breach of contract, and (3) an accounting. The jury either rejected or did not award damages on any of those claims, and those verdicts are not challenged on appeal.

[7] They also sued Garcia's attorney for keeping the bulk of the $66,125, but the trial court dismissed the claims against the attorney. That ruling is not challenged on appeal.

6

property and was entitled to possession. The court entered a "[p]artial judgment" on that issue on August 18, 2017. When Garcia attempted to appeal that partial judgment, we dismissed his appeal due to the lack of a final judgment.

2. *Jury trial and verdict on monetary claims*

In February 2022, the parties proceeded to a six-day jury trial on the claims still remaining in their respective civil actions.[8] At trial, Garcia completely changed the factual basis for his breach of contract claim: He did not introduce a written July 2015 contract or any amendments to that contract; instead, he testified that the Sirimannes promised to pay him $400,000 and, as proof, he pointed to the $400,000 amount to be initially deposited into escrow under the April 2016 contract in which Garcia purported to sell the home to Ben.

The jury deliberated for six days.

The jury found the Sirimannes liable to Garcia for breach of contract in the amount of $400,000. In the special verdict underlying that award, the jury identified two contracts— namely, (1) the April 2016 written contract in which Garcia promised to sell the Sirimannes the home for $1.75 million, and (2) "an oral contract." On that same special verdict form, the jury also found that the Sirimannes "breach[ed] the contract(s) made with" Garcia.

The jury also found Garcia liable to the Sirimannes for fraud in the amount of $66,125. In the special verdict underlying

---

8    By this time, Garcia was still pursuing his claims for (1) breach of contract, (2) breach of fiduciary duty, and (3) fraud; the Sirimannes were still pursuing their claims for (1) breach of fiduciary duty, (2) fraud, and (3) money had and received/unjust enrichment.

7

that award, the jury found that Garcia knowingly or recklessly made a "false representation . . . of fact" to the Sirimannes; that Garcia intended the Sirimannes to rely on that representation; that the Sirimannes reasonably relied on Garcia's representation; that the Sirimannes would not have "reasonably relied" on the representations "had the true fact or facts . . . been disclosed" (in other words, that Garcia's representation was *material*); and that the Sirimannes' reasonable reliance on Garcia's representation caused them $66,125 in economic loss.

However, the special verdict form contained an erroneous instruction regarding how to fill it out because it directed the jury to "skip ahead" and *not* find Garcia liable for fraud if the jury found Garcia's representation to be material (when, logically, only a finding of *non-materiality* should warrant "skipp[ing] ahead" and not holding Garcia liable).[9]

The jury did not find Garcia liable to the Sirimannes on their claim for money had and received/unjust enrichment, having found in the special verdict form that Garcia did not

---

[9] That special verdict question and instruction state:
28B  Had the true fact or facts, or the concealed fact or facts been disclosed to [the Sirimannes] before they acted in reliance, or if [the Sirimannes] knew [Garcia's] promises were false before [they] acted in reliance, would [the Sirimannes] have reasonably relied on the promises?

____ Yes    ____ No

If your answer is No, skip ahead to question 33 [which is the question for the next claim, thereby indicating no award on the Sirimannes' fraud claim].

receive money that was intended to be used for the Sirimannes' benefit.

### 3.  *Entry of judgment on monetary claims*

The trial court entered a judgment that (1) awarded Garcia $400,000 for breach of contract, (2) awarded the Sirimannes $66,125 *for money had and received / unjust enrichment*, and (3) awarded the Sirimannes nothing for fraud.

### 4.  *Post-trial motions*

The Sirimannes filed a motion to vacate the judgment, urging that (1) holding them liable for breaching the written April 2016 sales contract was a "legal impossibility" because Garcia did not own the home to be sold, and hence could not perform the contract, and (2) the court misread the special verdict findings in awarding $66,125 for money had and received/unjust enrichment instead of fraud.  After further briefing and a hearing, the trial court denied the motion.  The court ruled that Garcia's contract award is valid because he "owned the exclusive right to purchase" the property and "[t]he jury determined that [the Sirimannes] failed to perform the contractual obligation to pay [Garcia] $400,000 for the assignment of that right."  The court further ruled that the Sirimannes "did not prevail" on their fraud claim.

## C.  *Appeals*

Garcia and the Sirimannes both timely appealed.

## DISCUSSION

The Sirimannes argue in their cross-appeal that insufficient evidence supports the jury's special verdict in favor of Garcia on his breach of contract claim. Garcia argues in his cross-appeal that the Sirimannes are entitled to no award (1) because the jury rejected their claim for money had and received/unjust

9

enrichment, and the jury should have heeded the erroneous instruction on the form and not awarded the Sirimannes any damages on their claim for fraud, and (2) because any award would violate the "one final judgment rule."

## I.      Garcia's Breach of Contract Claim

When a verdict for the plaintiff is "challenged for lack of substantial evidence, we must determine whether there is evidence that is "'"reasonable in nature, credible, and of solid value; [constituting] "substantial" proof of the essential elements which the law requires in a particular case."'""" (*Pinto v. Farmers Ins. Exchange* (2021) 61 Cal.App.5th 676, 688 (*Pinto*); *Zagami v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1096.)  That is, we "'view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . . .'  [Citation.]" (*Zagami*, at p. 1096.)

The Sirimannes challenge the sufficiency of the evidence supporting *only* the jury's findings in the special verdict form that Garcia breached the April 2016 *written* sales contract in which Garcia promised to sell the Sirimannes the home for $1.75 million.  Even if they prevailed on this challenge, the Sirimannes are not entitled to relief on appeal because they have not challenged the jury's findings that Garcia also breached an *oral* contract.  Indeed, the Sirimannes' briefs mischaracterize the jury's findings by stating that the "only contract" breached was the written contract, and when questioned about this mischaracterization at oral argument, the Sirimannes disavowed any challenge to the sufficiency of the evidence underlying an award for breach of the oral contract.  By affirmatively asserting in their briefs that "the special verdict form . . . in fact allow[ed]

10

the jury to resolve every controverted issue" and by expressly disclaiming any "defect[]" with the special verdict form, the Sirimannes have disavowed any challenge to possible deficiencies in the jury's special verdict findings that support the verdict for breach of the oral contract. The Sirimannes thereby waived any challenge to the validity of the judgment awarding Garcia $400,000 for a breach of the *oral* contract.[10]

## II. The Sirimannes' Fraud Claim

### A. *Validity of special verdict form*

A trial court is obligated to correct a judgment that is "not consistent with or not supported by the jury verdict." (Code Civ. Proc., § 663, subd. (2); *Shapiro v. Prudential Property & Casualty Co.* (1997) 52 Cal.App.4th 722, 728-729.) When examining a special verdict for correctness, the trial court has to consider "[the] language [of the verdict form] in connection with the pleadings, evidence and instructions." (*Woodcock*, *supra*, 69 Cal.2d at p. 456.) We independently review whether the trial court has properly interpreted the special verdict in formulating the judgment. (*Id.* at p. 457; *Shapiro*, at p. 729.)

We independently conclude that the trial court here erred in not correcting the errors in the judgment awarding the Sirimannes nothing for their fraud claim and $66,125 for their money had and received/unjust enrichment claim. As explained above, a special verdict supporting an award for a cause of action will be upheld if the verdict form "contains every finding necessary to sustain [that] cause of action." (*Drink Tank*, *supra*,

---

**10** Because we affirm the verdict on the basis of the *oral* contract, we need not confront the Sirimannes' argument that judgment should not be entered against Champa for breach of the *written* contract.

71 Cal.App.5th at p. 545.) The jury made every finding, in the special verdict form, necessary to support the $66,125 verdict for the fraud claim. Conversely, the jury made *none* of the findings necessary to support a verdict on the money had and received/unjust enrichment claim. Thus, the court erred in denying the Sirimannes' motion to correct the judgment to align with the jury's special verdict findings.

Garcia resists this conclusion on the ground that the jury should not have made all of the findings necessary to support the fraud award; had the jury followed the special verdict's instructions, Garcia reasons, they would have stopped short of finding causation and damages. This is true. But it also ignores that the special verdict's instructions in this regard were obviously incorrect as a matter of logic (and thus akin to a typographical error),[11] which is undoubtedly why the jury disregarded them. (Cf. *Simgel Co., Inc. v. Jaguar Land Rover North America, LLC* (2020) 55 Cal.App.5th 305, 315-319 [reviewing court should credit the jury's special verdict findings and disregard obviously incorrect instructions within the special verdict form].)

### B. *One final judgment rule*

The one final judgment rule generally obligates parties to wait until the final disposition of a case before appealing as a means of discouraging multiple, piecemeal appeals during the pendency of a case before the trial court. (*Jackson v. Board of Civil Services Commissioners of City of Los Angeles* (2024) 99 Cal.App.5th 648, 661; *Morehart v. County of Santa Barbara*

---

[11] This was not the only defect in the special verdict form; the form was riddled with many other errors that neither the trial court nor counsel caught until deliberations commenced.

(1994) 7 Cal.4th 725, 743; see generally Code Civ. Proc., § 904.1.) Where, as here, a trial court bifurcates issues, the one final judgment rule obligates a party to wait until all phases are completed before appealing. (*Walton v. Magno* (1994) 25 Cal.App.4th 1237, 1240.) Applying this law, the trial court did not divest itself of jurisdiction over the Sirimannes' cross-complaint by bifurcating and adjudicating first the issue of possession.

## DISPOSITION

The judgment for Garcia on his breach of contract claim is affirmed. The trial court is directed to vacate the judgment awarding the Sirimannes $66,125 on their claim for money had and received/unjust enrichment and enter a different judgment awarding the Sirimannes $66,125 on the fraud claim consistent with the jury's special verdict. The judgment is affirmed in all other respects. Each party is to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, P. J.
HOFFSTADT

13

We concur:

_____, J.
BAKER


_____, J.
KIM (D.)