Filed 1/13/25  S&S Engineering and Construction v. Van Swae CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| S&S ENGINEERING AND CONSTRUCTION et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> JENNIFER VAN SWAE, <br><br> Defendant and Appellant. | G062352 <br><br> (Super. Ct. No. 30-2018-01000390) <br><br> O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, David A. Hoffer, Judge. Reversed and remanded with directions.

Yassin Law and Omar J. Yassin; Benedon & Serlin, Melinda W. Ebelhar and Kian Tamaddoni for Defendant and Appellant.

Alston, Alston & Diebold and Donald A. Diebold for Plaintiffs and Respondents.

Jennifer Van Swae appeals from a postjudgment order denying her motion for attorney fees. She argues the trial court erred by denying her motion for attorney fees under Code of Civil Procedure section 1021 (all undesignated statutory references are to this code). We agree with Van Swae and reverse. We conclude the trial court erred because, contrary to the trial court's interpretation, the instant case arose out of a lease agreement between the landlord and tenant. But, as the trial court did not make a finding as to whether Van Swae was the landlord under the lease and therefore a party to the lease, we remand for the trial court to hold a hearing on that issue. On remand, should the trial court conclude Van Swae was a party to the lease, the trial court will determine attorney fees under section 1021.

FACTUAL AND PROCEDURAL BACKGROUND

I.

THE UNDERLYING LITIGATION

*A. Complaint and First Amended Complaint*

In June 2018, S&S Engineering and Construction (S&S), Chad Susag, and Sunbelt Limited Companies, Inc. (Sunbelt) (collectively, Plaintiffs) filed a complaint against Van Swae—individually and as trustee of the Lorrin C. Harrison, Jr., Trust, the Harrison Family Trust, and the "Vanswae Harrison Trust"—and other defendants: John Kelley Harrison, Steve Haythorne, Salt Creek Realty, Inc., and Does 1 through 100 (collectively, Defendants).[1] Plaintiffs defined "Vanswae Harrison Trust" as

_____

[1] During trial, Plaintiffs moved to amend the complaint to add the Lorrin C. Harrison, Jr., Trust as a defendant. The trial court granted the motion.

2

"an entity comprised of Jennifer Van Swae, John Kelley Harrison and the Lorrin C. Harrison[,] Jr.[,] Trust and the Harrison Family Trust."[2] Plaintiffs amended the complaint and alleged the following in its first amended complaint.

Van Swae and other family members owned commercial property. In August 2015, Haythorne, Van Swae's real estate agent for the property, was negotiating a lease for the property with S&S president Susag. Haythorne informed Susag if S&S agreed to a one-year lease for a portion of the property, improved and graded the entire property, and made all the property rentable, Plaintiffs would receive a long-term lease for the entire property at a favorable rental rate. S&S contracted with Sunbelt, who then improved and graded the entire property. Plaintiffs incurred costs of $12,644.70 for improvements on the property that Plaintiffs did not eventually rent.

In November 2015, S&S entered into a one-year lease agreement for a portion of the property, approximately 7,000 square feet. The lease allowed renewals or extensions only by "mutual agreement by all parties in writing." It stated S&S, as the tenant, had "sole responsibility to pay any associated fines or expenses for [t]enant[ ]improvements or use." It included an attorney fee provision: "In any action or proceeding *arising out of this agreement*, the prevailing party between Landlord and Tenant shall be

---

[2] The name of this trust is spelled differently throughout the appellate record. In the complaint, it is "Vanswae Harrison Trust." In the one-year lease agreement, it is "Vanswae-Harrison Trust." In the reporter's transcript, it is "Van Swae Harrison Trust." In a minute order, it is "VanSwae Harrison Trust." Unless we are quoting the record, we will refer to the trust as the Vanswae-Harrison Trust, the spelling in the lease.

entitled to reasonable attorney fees and costs from the non-prevailing Landlord or Tenant . . . ." (Italics added.)

In February 2016, Sunbelt invoiced Haythorne $12,644.70 for the property improvements. Defendants did not pay. Plaintiffs learned Defendants did not intend to extend the one-year lease when Plaintiffs saw the property marketed for sale. Plaintiffs informed Defendants that Plaintiffs would "take a credit off the rent . . . to offset the costs and fees" for the improvements on the unrented portion of the property. Subsequently, Van Swae and the "Vanswae Harrison Trust" filed two unsuccessful unlawful detainer actions against Plaintiffs alleging nonpayment of rent.

Plaintiffs alleged four causes of action: (1) fraud, deceit, and intentional misrepresentation; (2) negligent misrepresentation; (3) breach of contract; and (4) common counts for work performed and materials furnished. Of particular relevance here, for their first cause of action, Plaintiffs alleged: "In the event Plaintiff knew the false nature of Defendants[*] material representations and omissions about Defendants extending a new lease to Plaintiffs in exchange for improvements to the property, Plaintiffs would never sign the lease [or] undertake improvements to any portion of the property." (Capitalization omitted.) They alleged they "were fraudulently induced to pay rent to Defendants which would not have been paid without Defendants' promises to extend a new lease." For their third cause of action, Plaintiffs alleged they entered into a contract "to improve the rentable space of Defendants' property, as confirmed in writing," and "[t]hat Defendant

4

failed to pay for the improvement to areas of the property that were not rented by Plaintiffs."[3]

*B. Trial, Section 631.8 Motion for Judgment, and a Statement of Decision*

A bench trial began in September 2021. Plaintiffs argued Defendants fraudulently induced Plaintiffs "to improve and rent a portion of" the property. They asserted Haythorne "pressured" S&S to enter into the one-year lease after grading the initial 7,000 square feet of the property and that he promised a long-term lease after completing improvements on the entire property.

After Plaintiffs rested, Van Swae and Haythorne moved for judgment under section 631.8. In a statement of decision, the trial court granted the motion as to the second, third, and fourth causes of action, finding them barred by the statute of limitations.[4] It denied the motion as to the first cause of action, allowing it to proceed. The trial court later allowed Plaintiffs to amend their complaint by adding an unjust enrichment cause of action.[5]

---

[3] Van Swae and Haythorne filed a joint answer (during trial, the parties stipulated Van Swae filed her answer as an individual and as a trustee of the Lorrin C. Harrison, Jr., Trust). There were also other filings immaterial to this appeal.

[4] The trial court characterized the third cause of action as breach of *oral* contract.

[5] We note, "There is no cause of action in California labeled 'unjust enrichment.'" (*City of Oakland v. Oakland Raiders* (2022) 83 Cal.App.5th 458, 477.) "Unjust enrichment is synonymous with restitution," and "[t]here are several potential bases for a cause of action seeking restitution." (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370.)

*C. Final Statement of Decision*

In the final statement of decision, the trial court found in favor of Defendants and ruled Plaintiffs would take nothing. The trial court first provided some relevant background:

"[T]his case involves a vacant lot . . . owned by Van Swae (along with other family members) who was represented by Haythorne, a real estate broker. In 2015, Susag contacted Haythorne about leasing the property . . . . While Susag and Haythorne were still discussing the terms of any lease, [Sunbelt] began the improvement work.

"On November 2, 2015, with the improvements on the leased portion of the property complete, Haythorne and [S&S] concluded a standard commercial lease. . . . After the lease was signed, [Sunbelt], who was not a party to the written lease, began grading work on the rear portion of the property (approximately 10,000 square feet) in hopes of obtaining a lease or sublease of this portion of the property in the future.

"On February 1, 2016, [Sunbelt], seeking payment for the improvements [it] performed, sent a $12,644.70 invoice to Haythorne. [Citation.] Neither Haythorne nor the landlord paid this invoice and a dispute developed over the responsibility for these costs." (Footnotes omitted.)

As to the first cause of action, the trial court noted, despite being labeled as a cause of action for "'fraud, deceit, and intentional misrepresentation,'" it was a false promise claim. The trial court concluded "plaintiffs failed to prove that there was a false promise to offer a long-term lease (in exchange for the short term lease and improvements)." It found: "Given that the lease required an extension agreement to be 'in writing' and the written evidence . . . contradicts the existence of such a promise, the testimony of Susag and [the principal of Sunbelt] does not prove that a false

6

promise was made." As to the unjust enrichment claim alleging Defendants were unjustly enriched by the property improvements, the trial court held Plaintiffs failed to prove the enrichment was unjust.

## II.

### THE FEE LITIGATION

Van Swae filed a memorandum of costs and a motion for attorney fees. She argued, because she prevailed in the underlying lawsuit, she was entitled to costs under section 1032, subdivision (b) and reasonable attorney fees pursuant to the lease agreement and Civil Code section 1717, subdivision (a). In the alternative, she contended she was entitled to attorney fees under section 1021.

Plaintiffs moved to tax costs and opposed the motion for attorney fees.

On December 5, 2022, the trial court denied Van Swae's motion for attorney fees and granted in part Plaintiffs' motion to tax costs. It found Van Swae was the prevailing party in the underlying litigation. But it concluded she was not entitled to attorney fees under Civil Code section 1717, because "plaintiffs did not sue to enforce the written lease but to enforce a purported oral contract to extend both the duration and the scope of the lease."

The trial court also held Van Swae was not entitled to attorney fees under section 1021, as the litigated claims did not arise out of the lease agreement but out of "separate negotiations carried on between Susag and non-party [principal of Sunbelt], on the one hand, and . . . Haythorne (Van Swae's broker) on the other." The trial court reasoned: "Fundamentally, plaintiffs argued that Haythorne promised to enter into a new and long-term lease that would include both the leased property and the rear (and larger)

7

portion of the lot in exchange for the provision of services, including grading and compaction of the land. Moreover, a great deal of the trial was focused on obtaining payment for the services rendered[—]having nothing to do with any contract whatsoever. Finally, it is important to note that the action involved numerous people who would have nothing to do with the contract including Susag, Sunbelt . . . , [Sunbelt's principal], Van Swae as an individual and as trustee for the Harrison Family Trust, John Kelly Harrison as an individual and as trustee of Lorrin Harrison[,] Jr.[,] Trust and the Harrison Family Trust, Haythorne, and Salt Creek Realty, Inc."

## DISCUSSION

### I.

#### TIMELINESS OF APPEAL

S&S argues Van Swae filed an untimely appeal because the appeal was from the amended judgment, which was served on Van Swae on December 16, 2022, and not from the December 5, 2022, minute order in this case. In August 2023, S&S filed a motion to dismiss the appeal as untimely, and Van Swae opposed the motion. In a well-reasoned written order issued on September 7, 2023, a different panel of this court denied the motion to dismiss, considering the same argument presented in S&S's brief. It found Van Swae timely appealed from the December 5, 2022, minute order. We agree with that order and incorporate it here.

### II.

#### THE LANDLORD UNDER THE LEASE AGREEMENT

S&S argues Van Swae was not the landlord under the one-year lease agreement (i.e., a party to the agreement) and therefore cannot avail herself of the attorney fee provision in the lease. The lease in the record identifies the landlord as the "Vanswae-Harrison Trust" and does not include

8

the landlord's signature. In her reply brief, Van Swae contends Vanswae-Harrison Trust refers to two entities—herself and the Lorrin C. Harrison, Jr., Trust of which she is the trustee.[6]

Despite arguments on this issue before the trial court on the attorney fee motion, the trial court did not make any finding whether Van Swae was the landlord under the lease and therefore whether she was a party to the lease. Instead, in its minute order denying attorney fees, the trial court made an assumption: "Presumably, Van Swae seeks the attorney fees in her capacity as the trustee for the VanSwae Harrison Trust as that was the landlord under the lease."[7] And, from that assumption, the trial court proceeded to hold that the instant case did not arise from the lease.

As we will explain below, we find the instant case arose from the lease and therefore we reverse. But, due to the lack of an express finding on whether Van Swae was a party to the lease, we cannot conclude she is entitled to an award of attorney fees under section 1021. Therefore, we are

---

[6] In support of this argument, Van Swae relied on her trial testimony. At trial, when asked about the identity of the landlord on the lease, Vanswae-Harrison Trust, she explained, "It's Van Swae Harrison Trust[.] [T]here is only one Harrison Trust, that's the Lorri[n] C. Harrison Junior Trust and I'm Van Swae. So this was for both of us." She clarified the Vanswae-Harrison Trust was not its own entity, but referred to herself and the Lorrin C. Harrison, Jr., Trust.

[7] We note, in its final statement of decision, the trial court found Van Swae owned the property and her real estate broker communicated with Susag to lease the property. But it made no finding that Van Swae was the landlord under the lease agreement, as such a finding was unnecessary to the disposition of the case.

remanding for the trial court to hold a hearing and make a finding whether Van Swae was a landlord under the one-year lease agreement with S&S.

## III.

## ATTORNEY FEES

On appeal, Van Swae does not challenge the trial court's denial of attorney fees under Civil Code section 1717. Instead, she only argues the trial court erred by denying her motion for attorney fees under section 1021. We agree.

*A. Standard of Review*

Typically, "[w]e review attorney fee awards on an abuse of discretion standard." (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488.) But we review attorney fee awards on a de novo standard when the facts are undisputed, entitlement to attorney fees rests on the interpretation of a contract, "and no extrinsic evidence is offered to interpret the contract." (*San Francisco CDC LLC v. Webcor Construction L.P.* (2021) 62 Cal.App.5th 266, 285.)

S&S argues the abuse of discretion standard of review applies because Van Swae challenges the following findings of fact by the trial court: (1) whether the claims arose from the lease or a second oral contract; (2) whether the parties to the lease negotiated the second oral contract to improve the unrented area of the property; (3) whether the unrented area was included in the lease. This argument mischaracterizes the nature of the appeal. Van Swae is not challenging findings of fact. Rather, Van Swae contends the trial court misinterpreted the attorney fee provision in the one-year lease agreement. We review de novo, because the facts are undisputed, Van Swae's right to attorney fees depends on the interpretation of the lease, and no extrinsic evidence is offered.

10

*B. The Trial Court Erred by Denying Attorney Fees*

"[S]ection 1021 provides the basic right to an award of attorney fees." (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341 (*Xuereb*).) It sets forth: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." (§ 1021.) "Under this statute, the allocation of attorney fees is left to the agreement of the parties. There is nothing in the statute that limits its application to contract actions alone." (*Xuereb*, *supra*, 3 Cal.App.4th at p. 1341.) "[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." (*Ibid.*)

"'In resolving a motion for attorney fees, the [trial] court should consider the pleaded theories of recovery, the theories asserted and the evidence produced at trial, if any, and also any additional evidence submitted on the motion in order to identify the legal basis of the prevailing party's recovery.'" (*Lerner v. Ward* (1993) 13 Cal.App.4th 155, 158 (*Lerner*).)

Van Swae argues we should construe the phrase "arising out of this agreement" broadly. In support, she cites several cases, including *Xuereb* and *Lerner*. In *Xuereb*, plaintiffs sued sellers of real property for delivering the property in defective condition, bringing various tort causes of action and a breach of contract cause of action. (*Xuereb*, *supra*, 3 Cal.App.4th at p. 1341.) Plaintiffs alleged the sellers "failed to conduct a competent and diligent inspection of the property, and that they handled the transaction negligently." (*Id.* at p. 1343.) After the jury found in favor of the sellers on all

causes of action, the sellers moved for attorney fees, but the trial court denied the motion. (*Id.* at p. 1341.)

The appellate court reversed the order denying attorney fees. It found the language of the attorney fees provision in the parties' purchase agreement—specifically, "'[i]f this Agreement *gives rise to* a lawsuit or other legal proceeding'"—was "broad enough to encompass both contract actions and actions in tort." (*Xuereb*, *supra*, 3 Cal.App.4th at p. 1343.) It explained "it is common to use the phrase 'arises from' or 'arises out of' in a far more general, transactional sense than is suggested by phrases such as 'derives from' or 'proximately caused by.'" (*Id.* at p. 1344.) It also determined its "interpretation accords with the intention of the parties," given "the complaint does not indicate that [plaintiffs] were seeking attorney fees only in connection with their contract cause of action and not in connection with their tort claims, or that their attorney fees claim was limited to parties other than appellants." (*Id.* at p. 1343.) The court concluded the various tort causes of action arose from the agreement because "[n]one of them was 'quite independent of the basic contractual arrangement'; they arose from the underlying transactional relationship between the parties, as memorialized by the Purchase Agreement." (*Id.* at p. 1344.)

In *Lerner*, plaintiffs sued sellers of real property for fraud. (*Lerner*, *supra*, 13 Cal.App.4th at p. 157.) Their purchase agreement provided the prevailing party was entitled to attorney fees "'[i]n any action or proceeding arising out of this agreement . . . .'" (*Id.* at pp. 158–159.) The jury found in favor of the sellers. The sellers thereafter moved for attorney fees, but the trial court denied the motion. (*Id.* at p. 157.) The appellate court reversed the order denying attorney fees. It held the fraud claim "arose out of the written agreement," because plaintiffs alleged and attempted to prove

12

sellers, "through their fraudulent representations, induced [plaintiffs] to enter into an agreement to purchase the property." (*Id.* at p. 160.)

Here, the attorney fee provision in the lease agreement resembles the provisions in *Xuereb* and *Lerner*. The phrase—"[i]n any action or proceeding arising out of this agreement"—is broad enough to encompass "any action or proceeding arising out of the agreement," including tort and contract causes of action. (*Lerner*, *supra*, 13 Cal.App.4th at p. 160.) Like the plaintiffs in *Lerner*, S&S alleged and tried to prove Defendants fraudulently induced them to enter into the one-year lease and unjustly enriched the Defendants. Because S&S entered into the lease, it sued Defendants for general damages, including, inter alia, rent paid, the cost of the improvements required under the lease, and the cost of improvements on the unrented portion of the property. In its final statement of decision, the trial court acknowledged the theory of plaintiffs' case that they were induced to sign the one-year lease: "plaintiffs fail to prove that there was a false promise to offer a long-term lease (in exchange for the short term lease and improvements)." Contrary to S&S's assertion, the one-year lease did not merely establish the parties' relationship. It was out of the lease agreement (and negotiations for the long-term lease) that the lawsuit arose.

S&S contends the gravamen of the lawsuit was the second oral contract, the promise of a long-term lease in exchange for improvements on the second portion of the property, rather than the one-year lease. Indeed, S&S alleged breach of oral contract, a cause of action the trial court concluded was barred by the statute of limitations during trial. But the fraud and unjust enrichment claims were equally important to Plaintiffs' case. These were the only claims that proceeded through a full trial, and Plaintiffs requested a significant sum of damages arising from these claims.

13

S&S also argues the cases on which Van Swae relies do not involve factual disputes between competing contracts. This factual distinction is immaterial. S&S still alleged and tried to prove Van Swae and Defendants fraudulently induced it to enter into the one-year lease, just as in *Lerner*, which involved an allegation that Defendants, "through their fraudulent representations, induced the [plaintiffs] to enter into an agreement." (*Lerner*, *supra*, 13 Cal.App.4th at p. 160.)

Finally, S&S asserts Van Swae failed to provide an adequate record on appeal, because it did not include any trial testimony or cite any trial exhibits to address factual disputes. But the instant appeal presented only a legal question, the interpretation of the attorney fee provision in the lease. The record on appeal was sufficient to address that question.[8]

In short, we conclude the causes of action alleged and tried before the trial court arose from the one-year lease agreement. "None of them was 'quite independent of the basic contractual arrangement.'" (*Xuereb*, *supra*, 3 Cal.App.4th at p. 1344.) Therefore, we reverse the order denying attorney fees.

DISPOSITION

The trial court's order denying Van Swae's motion for attorney fees is reversed, and the matter is remanded to the trial court. We direct the trial court to hold a hearing to determine whether Van Swae was a landlord under the one-year lease agreement and therefore a party to the lease. If, after such hearing, the trial court decides Van Swae was a party to the lease,

---

[8] After S&S filed its brief, we granted Van Swae's motion to augment the record to include trial transcripts to address a possible factual dispute on appeal—whether Van Swae was a party to the lease agreement.

14

the trial court will determine attorney fees under section 1021. If the trial court finds she was not a party to the lease, the trial court shall deny her motion for attorney fees. Van Swae is entitled to costs on appeal.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.